**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF SOUTH CAROLINA**
**GREENVILLE DIVISION**

| | |
|---|---|
| CHARLES PORTER, *on behalf of himself and all others similarly situated*,<br><br>Plaintiff,<br>vs.<br><br>SPAN-AMERICA MEDICAL SYSTEMS, INC., THOMAS D. HENRION, JAMES D. FERGUSON, THOMAS F. GRADY, RICHARD C. COGGINS, ROBERT H. DICK, DAN R. LEE. LINDA D. NORMAN, THOMAS SULLIVAN, and TERRY ALLISON RAPPUHN,<br><br>Defendants. | Case No.: 6:17-cv-01357-MGL<br><br>**CLASS ACTION COMPLAINT**<br><br>**DEMAND FOR JURY TRIAL** |

**CLASS ACTION COMPLAINT FOR VIOLATIONS OF**
**SECTIONS 14(d), 14(e), AND 20(a) OF THE SECURITIES EXCHANGE ACT OF 1934**

Plaintiff Charles Porter ("Plaintiff"), on behalf of himself and the proposed Class defined herein, brings this class action suit for violations of Sections 14(d), 14(e), and 20(a) of the Securities Exchange Of 1934. In support of this Class Action Complaint, Plaintiff, by his attorneys, alleges upon information and belief, except for his own acts, which are alleged on knowledge, as follows:

**INTRODUCTION**

1.      Plaintiff brings this action on behalf of himself and the public stockholders of Span-America Medical Systems, Inc. ("Span-America" or the "Company") against the Company, Span-America's Board of Directors (collectively, the "Board" or the "Individual Defendants," as further defined below), Savaria Corporation ("Parent"), and Parent's wholly-owned subsidiary, Savaria (SC) Inc. ("Purchaser," and together with Parent, "Savaria"),  for violations of Section 14(d)(4), and Rule 14D-9 promulgated thereunder by the U.S. Securities and Exchange Commission (the

"SEC"), and Sections 14(e), and 20(a). Specifically, Defendants solicit the tendering of stockholder shares in connection with the sale of the Company to Savaria, through a recommendation statement that omits material facts necessary to make the statements therein not false or misleading. Stockholders require this material information to decide whether to tender their shares.

2.     On May 1, 2017, the Company announced that it had entered into an agreement and plan of merger (the "Merger Agreement"), by which Savaria would commence a tender offer (the "Tender Offer") to acquire all of the outstanding shares of Span-America at a purchase price of $29.00 per share in cash (the "Proposed Transaction"). The Tender Offer is set to expire on June 15, 2017.

3.     In connection with the commencement of the Tender Offer, on May 17, 2017, the Company filed a Recommendation Statement on Schedule 14D-9 (the "Recommendation Statement") with the SEC. The Recommendation Statement is materially deficient and misleading because, *inter alia*, it fails to disclose material information about the financial projections prepared by the Company and relied upon by the Company's financial advisor, and potential conflicts of interest regarding Span-America's managers and directors. Without all material information, Span-America's stockholders cannot make an informed decision regarding whether to exchange their shares in the Tender Offer. The failure to adequately disclose such material information constitutes a violation of §§ 14(d)(4), 14(e), and 20(a) of the Exchange Act, as stockholders need such information in order to make a fully-informed decision regarding tendering their shares in connection with the Tender Offer.

4.     For these reasons, and as set forth in detail herein, the Individual Defendants have violated the federal securities laws. Accordingly, Plaintiff seeks to enjoin the Proposed

Transaction or, in the event the Proposed Transaction is consummated, recover damages resulting from the Individual Defendants' violations of these laws. Judicial intervention is warranted here to rectify existing and future irreparable harm to the Company's stockholders.

## JURISDICTION AND VENUE

5.      The claims asserted herein arise under §§ 14(d), 14(e), and 20(a) of the Exchange Act, 15 U.S.C. § 78aa. The Court has subject matter jurisdiction pursuant to § 27 of the Exchange Act, 15 U.S.C. §78aa, and 28 U.S.C. § 1331 (federal question jurisdiction).

6.      The Court has personal jurisdiction over each of the Defendants because each conducts business in and maintains operations in this District or is an individual who either is present in this District for jurisdictional purposes or has sufficient minimum contacts with this District as to render the exercise of jurisdiction by this Court permissible under traditional notions of fair play and substantial justice.

7.      Venue is proper in this District under § 27 of the Exchange Act, 15 U.S.C. §78aa, as well as pursuant to 28 U.S.C. § 1391, because: (i) the conduct at issue took place and had an effect in this District; (ii) Span-America maintains its principal place of business in this District and each of the Individual Defendants, and Company officers or directors, either resides in this District or has extensive contacts within this District; (iii) a substantial portion of the transactions and wrongs complained of herein, occurred in this District; (iv) most of the relevant documents pertaining to Plaintiff's claims are stored (electronically and otherwise), and evidence exists, in this District; and (v) defendants have received substantial compensation in this District by doing business here and engaging in numerous activities that had an effect in this District.

## PARTIES

8.      Plaintiff is, and has been at all relevant times, the owner of shares of Span-America common stock.

9.      Defendant Span-America, a South Carolina corporation, manufactures and markets a comprehensive selection of pressure management products for the medical market. Additionally, the company manufactures and markets beds and related in-room furnishing products for the long-term care market, and supplies custom foam and packaging products to the consumer and industrial markets. The Company, organized and existing under the laws of South Carolina, maintains its principal executive offices at 70 Commerce Drive, Greenville, South Carolina 29615.  Span-America's common stock is traded on the NASDAQ under the ticker symbol "SPAN."

10.      Defendant Thomas D. Henrion ("Henrion") is Chairman of the Board of Span-America. Henrion serves as Chairman of the Company's Compensation & Management Development Committee. Henrion has served as a director of Span-America since 1996.

11.      Defendant James D. Ferguson ("Ferguson") serves as both the President and Chief Executive Officer ("CEO") of Span-America. Ferguson was named President and Chief Executive Officer of the Company in 1996 and continues to serve in those roles to this day.

12.      Defendant Thomas F. Grady ("Grady") is a director of Span-America, and has served in this capacity since 1975. Grady is a member of the Company's Compensation & Management Development Committee.

13.      Defendant Richard C. Coggins ("Coggins") is a director of Span-America, and has served in this capacity since 2016.

14.      Defendant Robert H. Dick ("Dick") is a director of Span-America, and has served in this capacity since 1999.

15.      Defendant Dan R. Lee ("Lee") is a director of Span-America and has served in this capacity since 2008.

16.     Defendant Linda D. Norman ("Norman") is a director of Span-America. Norman currently serves as Chairwoman of the Company's Nominating and Governance Committee.

17.     Defendant Thomas Sullivan ("Sullivan") has served as a director of Span-America since May 2015.

18.     Defendant Terry Allison Rappuhn ("Rappuhn") is a director of Span-America. Rappuhn is a member of the Company's Audit Committee.

19.     Defendants Rappuhn, Sullivan, Norman, Lee, Dick, Coggins, Grady, Ferguson, and Henrion, are collectively referred to as "Individual Defendants" and/or the "Board."

## CLASS ACTION ALLEGATIONS

20.     Plaintiff brings this action individually and as a class action on behalf of all holders of Span-America's stock who are being, and will be, harmed by Defendants' actions described herein (the "Class"). Excluded from the Class are Defendants herein and any person, firm, trust, corporation, or other entity related to, controlled by, or affiliated with, any Defendant, including the immediate family members of the Individual Defendant.

21.     This action is properly maintainable as a class action under Federal Rule of Civil Procedure 23.

22.     The Class is so numerous that joinder of all members is impracticable. According to the Recommendation Statement, as of May 1, 2017, there were 2,764,625 shares issued and outstanding. These shares are held by thousands of beneficial holders who are geographically dispersed across the country.

23.     There are questions of law and fact which are common to the Class and which predominate over questions affecting any individual Class member. The common questions include, inter alia, the following:

a.    whether Defendants have violated Sections 14 and 20 of the Exchange Act in connection with the Proposed Transaction; and

b.    whether Plaintiff and the other members of the Class would be irreparably harmed were the transactions complained of herein consummated.

24.    Plaintiff's claims are typical of the claims of the other members of the Class and Plaintiff does not have any interests adverse to the Class.

25.    Plaintiff is an adequate representative of the Class, has retained competent counsel experienced in litigation of this nature, and will fairly and adequately protect the interests of the Class.

26.    The prosecution of separate actions by individual members of the Class creates a risk of inconsistent or varying adjudications with respect to individual members of the Class, which could establish incompatible standards of conduct for Defendants.

27.    Plaintiff anticipates that there will be no difficulty in the management of this litigation.  A class action is superior to other available methods for the fair and efficient adjudication of this controversy.

28.    Defendants have acted on grounds generally applicable to the Class with respect to the matters complained of herein, thereby making appropriate the relief sought herein with respect to the Class a whole.

29.    Accordingly, Plaintiff seeks injunctive and other equitable relief on behalf of himself and the Class to prevent the irreparable injury that the Company's stockholders will continue to suffer absent judicial intervention.

## FURTHER SUBSTANTIVE ALLEGATIONS

**Company Background**

30.     Span-America offers a comprehensive line of specialty solutions for pressure management and patient positioning. The Company manufactures therapeutic support surfaces, medical bed frames, patient positioners, mattress overlays and wheelchair cushions for the medical market. Additionally, the Company manufactures foam mattress pads and pillows for the consumer bedding market as well as a variety of custom designed foam products for the industrial market. The Company also sells skin care products, fall protection products, and in-room furniture used mainly in the long-term care portion of the medical market.

31.     Recognized in medical facilities throughout North America, Span-America's clinically-proven product lines include: PressureGuard® therapeutic mattress systems; Geo-Mattress® therapeutic mattress systems; Geo-Matt® overlays and seat cushions; Span+Aids® patient positioners; Isch-Dish® wound care seating products; and Selan® skin care products. These products and services are sold through hundreds of dealers and distributors in the US and Canada.

32.     On December 23, 2017, the Company reported earnings for the fiscal year ended October 1, 2016. The earnings show gross profit increased 3% during fiscal 2016 to $22.3 million compared with $21.6 million in fiscal 2015. Net sales for fiscal year 2016 rose 5% to $67.6 million compared with $64.3 million in fiscal 2015. Net income for fiscal 2016 rose 6% to $4.2 million, or $1.54 per diluted share, from $4.0 million, or $1.33 per diluted share, in fiscal 2015. These strong financial results evidence a Company that is well positioned, as a stand-alone entity, to continue to deliver value to its stockholders.

33.     In light of Span-America's recent and historical financial performance and strong growth prospects, it is vital that Span-America's stockholders receive all material information

concerning the Proposed Transaction, so that they may make an informed decision regarding whether to tender their shares.

**The Merger Process**

34.     In the latter half of 2016, at which time the Board, following various meetings with representatives of prospective financial advisor Robert W. Baird & Co. ("Baird") and Wyche, P.A. ("Wyche"), Span-America's outside general counsel, determined to take necessary steps to explore the possibility of a strategic transaction.

35.     This exploration was cut short, when, on November 16, 2016, Savaria's Vice President for Corporate Development, Nicolas Rimbert, spoke via telephone with Span-America's CEO, James D. Ferguson, regarding potential acquisition of Span-America by Savaria.

36.     Shortly thereafter, Savaria submitted a written indication of interest to acquire Span-America for $25 to $27 per share in cash subject to, among other things, due diligence, and requested a response by December 12, 2016 and a 60-day exclusivity commitment.

37.     Savaria's offer was presented to the Board during a telephonic meeting on December 7, 2016. After reviewing the terms, the Board resolved to form a special committee (the "Special Committee"), comprised of four independent directors, to further explore the possibility of a strategic transaction with Savaria.

38.     On December 15, 2016, Span-America retained Baird as the company's financial advisor. Shortly thereafter, on January 2, 2017, Savaria entered into a nondisclosure and standstill agreement, and the parties proceeded with initial due diligence and negotiations regarding the structure of the Proposed Transaction.

39.     As a result of these efforts, on March 3, 2017, Savaria submitted a one-page term sheet to representatives of Baird that contemplated an increased offer price of $27 per share, a breakup fee equal to approximately 5% of the total purchase price for all outstanding Span-

America shares, a 45-day additional due diligence period, a 60-day exclusivity period, a 35-day period from execution of a definitive agreement to closing of the proposed tender offer and backend merger and the entry of Span-America's directors and senior officers into a tender support agreement.

40.     Five days later, after reviewing the March 3 term sheet with Baird, Wyche, and most of the other directors, the Special Committee instructed representatives of Baird to seek a price of $29.50 per share.

41.     The following day, March 9, 2017, Savaria indicated a willingness to increase its offer to $29 per share, lower the breakup fee to 3.5% of the total consideration paid for Span-America's outstanding shares, and reduce the period to complete due diligence to 30 days. These proposed modifications were presented to the entire Board that same day. After balancing the risk of losing Savaria's offer against the probability of receiving a better offer with a competitive bidding process, the Board determined that it was in the best interest of Span-America to proceed with the terms and related process proposed by Savaria. To that end, the Board asked representatives of Baird to request a draft letter of intent from Parent consistent with the provisions of Parent's March 3, 2017 term sheet.

42.     On March 10, 2017, Savaria provided a draft letter of intent (the "LOI") to representatives of Baird. Amongst other considerations, the LOI contemplated an abbreviated passive "window-shop" market check. Although this was initially a cause of concern, the Board determined to move forward with the process after concluding that a soft market check prior to signing a deal with Parent could significantly jeopardize Parent's attractive proposal, and that a competitive auction process was unlikely to produce another company that would be interested in

outbidding Savaria. Accordingly, the Board authorized Wyche to enter into negotiations to finalize the terms of the LOI.

43.     Negotiations over the terms of the LOI continued for several days until, on March 16, 2017, following a threat from Savaria that the company was "prepared to walk," the Special Committee met to assess the current status of negotiations. At the time, negotiations had reached an impasse as a result of: (a) Savaria's desire to obtain employment agreements with Span-America's senior managers; (b) Savaria's demand that Span-America not be allowed to entertain competing offers during the exclusivity period in the LOI; (c) disagreement between the respective parties regarding the minimum amount of Span-America shares that must be tendered in order for Parent to close the tender offer;  and (d) Savaria's desire to shorten the period between deal announcement and closing of the tender offer to 42 days.

44.     Although the Special Committee initially objected to the any employment discussions between Savaria and the Company's management while the Special Committee was negotiating a potential merger, the Special Committee concluded that Savaria's entry into a definitive agreement could be conditioned in the LOI on obtaining reasonably satisfactory employment agreements with Span-America's senior managers, provided that certain individuals were recused from voting on any proposed transaction with Parent so as to avoid any conflict of interest. Furthermore, the Special Committee also determined that Span-America could forego an opportunity to consider other offers during the LOI exclusivity period if the exclusivity period were shortened, that the minimum percentage of Span-America shares that must be tendered in order for Parent to close the tender offer should be 90%, and that the closing of the tender offer could be shortened up to 45 days in order to allow Span-America to conduct a more lengthy post-

announcement market check. Satisfied with these conditions, later that night, representatives of Savaria and Span-America finalized the LOI. The LOI was executed the following day.

45.     Over the next several weeks, the parties conducted due diligence and continued negotiations regarding various terms of the merger agreement, including the reverse breakup fee, the inclusion of a 45 day "window shop" period between transaction announcement and closing of the tender offer, and the minimum percentage of Span-America shares that must be tendered in order for Parent to close the tender offer. After exchanging several revised drafts, a finalized draft of the Merger Agreement was presented to the Board on May 1, 2017. The finalized draft set the minimum percentage of Span-America shares that must be tendered in order for Parent to close the tender offer at 66⅔%, replaced the reverse breakup fee with an explicit commitment to reimburse Span-America for its out-of-pocket costs, and contemplated a 45 day window for Span-America to conduct a post-announcement market check. Interestingly, the requirement that Span-America's senior management enter into employment agreements as a condition to Savaria entering into a Merger Agreement, which had been a point of contention between the parties just a few weeks earlier, was mysteriously withdrawn by Savaria.

46.     During a special Board meeting on May 1, 2017, the Board reviewed the proposed final draft of the merger agreement as well as the fairness opinions prepared and provided by Baird. The Board unanimously approved the merger, and the Company and Savaria executed the Merger Agreement and other transaction documents that same day.

47.     Later that day, Span-America issued a press release announcing the combination.

**The Merger Announcement**

48.     In a press release dated May 1, 2017, Span-America announced that it had entered into a Merger Agreement with Savaria pursuant to which Savaria will acquire all of the outstanding shares of Span-America common stock for $29.00 per share in cash.

49.     The press release states in pertinent part:

Span-America Medical Systems, Inc. ("Span-America") (NASDAQ: SPAN) announced today that it has reached an agreement to be acquired by Savaria Corporation, an Alberta, Canada corporation ("Savaria") (TSX: SIS). Savaria intends to acquire Span-America by way of an all-cash tender offer for $29 per share, or approximately $80.2 million. The transaction is expected to close in the second calendar quarter of 2017.

Tom Henrion, Chairman of Span-America's board of directors, said, "The Board of Directors of Span-America unanimously approved the proposed acquisition of Span-America by Savaria. The proposed all-cash tender offer of $29 per share represents an immediate and substantial cash value as well as a significant premium over our stock price, and we believe it fully values the company for our shareholders. Savaria's offer reflects the value that our management and employee team has created for our shareholders. All of Span-America's board members and senior managers have agreed to tender their shares in the tender offer."

Founded in 1979, Savaria provides accessibility solutions for the elderly and physically challenged to increase their mobility and independence. Savaria designs, manufactures, distributes and installs accessibility equipment, such as stair lifts for straight and curved stairs, vertical and inclined wheelchair lifts, elevators for home and commercial use, as well as patient lifts. In addition, it converts and adapts vehicles to be wheelchair accessible. It also operates a network of franchisees and corporate stores through which new and recycled accessibility equipment is sold and, in certain locations, vehicle conversions are performed. Savaria records close to 60% of its revenue outside Canada, primarily in the United States. It operates a sales network of some 400 retailers and affiliates in North America and employs some 500 people. Its principal places of business are located in Laval, Quebec, Brampton, Ontario, and Huizhou, China.

50.     As noted in both the press release and Merger Agreement, Span-America's stockholders will have the right to receive, in exchange for each share of Span-America stock, $29.00 per share in cash. However, the consideration to be paid to Plaintiff and the Class in the Proposed Transaction is inadequate because, among other things, the intrinsic value of the Company is materially in excess of the amount offered in the Proposed Transaction.

51.     Here, the Individual Defendants have secured a deal that significantly harms shareholders, as Plaintiff and the Class will lose their right to share proportionately and equitably in the future success of the Company as a standalone entity.

**The Recommendation Statement Omits Material Information**

52.     On May 17, 2017, Span-America filed the Recommendation Statement with the SEC in support of the Tender Offer commenced by Savaria that same day.  As alleged below and elsewhere herein, the Recommendation Statement contains material misrepresentations and omissions of fact that must be cured to allow Span-America's stockholders to render an informed decision with respect to the Tender Offer.

53.     As discussed below, the Recommendation Statements omits material information regarding (i) potential conflicts of interest by Span-America's management and directors; (ii) the valuation analyses prepared by Span-America's financial advisor in connection with the rendering of its fairness opinion; and (iii) Span-America's management's projections, utilized by Baird in its financial analyses. This material information directly impacts the Company's expected future value as a standalone entity, and its omission renders the statements made materially misleading and, if disclosed, would significantly alter the total mix of information available to Span-America's stockholders.

54.     With regard to the potential conflicts of interest faced by Span-America's management and directors, the Recommendation Statement omits and conceals material facts concerning the timing and content of all communications regarding anticipated post-transaction employment of Span-America's management and directors, including who participated in all such communications. As detailed in the background section of the recommendation Statement, Savaria sought to condition the Proposed Transaction on Span-America's senior managers entering into employment agreements. The Recommendation Statement mentions that this issue arose both in the negotiation of the LOI and the Merger Agreement, but fails to disclose when Savaria first indicated it was interested in retaining management. Although Savaria eventually withdrew this demand, information regarding the timing and nature of these requests, and disclosure of the facts

behind for the abandonment of these requests, is noticeably absent from the Recommendation Statement. As stated in the Recommendation Statement, the Merger Agreement contemplates the continued retention of Span-America's employees and the compensation and benefit plans that will therefore apply to them.

55.     Management and certain directors stand to benefit significantly following the consummation of the Proposed Transaction. Accordingly, communications regarding post-transaction employment during the negotiation of the underlying transaction must be disclosed to stockholders. This information is necessary for stockholders to understand potential conflicts of interest of management and the Board, as that information provides illumination concerning motivations that would prevent fiduciaries from acting solely in the best interests of the Company's stockholders. Here, with respect to the sections of the Recommendation Statement titled: (i) "*Background of the Offer and the Merger*"; (ii) "*Reasons for Recommendation*"; (iii) "*Arrangements with Purchaser, Parent and their Respective Affiliates,*"; and "*Employee Matters Following Closing,*" there is a dearth of material information relating to the timing and nature of all communications regarding future employment of Span-America's officers and directors, including who participated in all such communications.

56.     The Recommendation Statement also fails to disclose critical information concerning Span-America's managements' financial projections, as utilized by Baird in its financial analyses, and the opinions and analysis of Baird, on which the Board purportedly relied. All this omitted information, if disclosed, would significantly alter the total mix of information available to Span-America's stockholders that they would rely upon in deciding how to vote on the Proposed Transaction.

57.     With respect to Baird's *Discounted Cash Flow Analysis*, the Recommendation Statement fails to disclose: (i) Span-America's projected unlevered free cash flows as prepared by management and used by Baird in its analysis; (ii) the constituent line items used in calculating unlevered free cash flow, including net income, after-tax net interest, depreciation and amortization, capital expenditures, increases in net working capital, and other operating and investing cash flows; (iii) the estimated terminal value of the Company; and (iv) the basis and rationale for utilizing a discount rate ranging from 10.5% to 12.5%.

58.     When a banker's endorsement of the fairness of a transaction is touted to shareholders, the valuation methods used to arrive at that opinion as well as the key inputs and range of ultimate values generated by those analyses must also be fairly disclosed. Furthermore, disclosure of projected financial information is material because it provides stockholders with a basis to project the future financial performance of a company, and allows stockholders to better understand the financial analyses performed by the company's financial advisor in support of its fairness opinion. Here, the Defendants' failure to provide full and accurate disclosures renders the Recommendation Statement false and misleading, including, *inter alia*, the following sections of the Recommendation Statement: (i) "*Background of the Offer and the Merger*"; (ii) "*Reasons for Recommendation*"; (iii) "*Opinion of Span-America's Financial Advisor*"; and (iv) "*Certain Unaudited Projected Financial Information*."

59.     Additionally, the Recommendation Statement also fails to disclose material information concerning the Company's financial projections. Specifically, the Recommendation Statement discloses two non-GAAP accounting metrics for projected financial information over the years 2017-2021: EBITDA and EBIT. Although the Recommendation Statement provides a definition for how these metrics were calculated, it fails to provide the line item metrics used to calculate them. Providing these non-GAAP metrics without disclosing the line item metrics used to calculate them, or

otherwise reconciling the non-GAAP projection to GAAP measures, makes the provided disclosure materially incomplete and misleading. Non-GAAP measures have no universally understood definition and vary widely between companies depending on the needs of management in promoting their own effect on Company performance. Rather than disclose the information necessary to reconcile these measures, Defendants merely state that "EBITDA is calculated as net income plus depreciation, amortization, tax expenses and interest expenses, excluding the impact of currency exchange gains and losses," and "EBIT is calculated as net income plus tax expenses and interest expenses, excluding the impact of currency exchange gains and losses."

60.     Accordingly, the Recommendation Statement provides Span-America stockholders with non-GAAP financial projections that make it extremely difficult for stockholders to assess the fairness of the Proposed Transaction.  Because of the non-standardized and potentially manipulative nature of non-GAAP measures, the SEC requires the disclosure of certain information in solicitation materials. Thus, when a company discloses information in a Recommendation Statement that includes a non-GAAP financial measures, as is the case here, the Company must also disclose comparable GAAP measures and a quantitative reconciliation of forward-looking information. 17 C.F.R. § 244.100.

61.     Item 10(e)(1)(i)(B) of SEC Regulation S-K further states that, with regard to forward-looking information such as financial projections, *any* reconciling metrics that are available without unreasonable efforts must be disclosed.   17 C.F.R. 229.10(e)(1)(i)(B). Moreover, on May 17, 2016, the SEC's Division of Corporation Finance released updated Compliance and Disclosure Interpretations ("C&DIs") on the use of non-GAAP financial measures.   One of the new C&DIs regarding forward-looking information, such as financial projections, explicitly requires companies to provide reconciling metrics for "free cash flow"

figures. S.E.C. Comp. & Disc. Interps., Question 102.07 (May 17, 2016) https://www.sec.gov/divisions/corpfin/guidance/nongaapinterp.htm.

62.     With respect to Baird's *Selected Publicly Traded Company Analysis*, the Recommendation Statement fails to disclose the individual multiples and financial metrics for the companies observed by Baird in its analysis.

63.     With respect to Baird's *Selected Transactions Analysis*, the Recommendation Statement fails to disclose the individual multiples and financial metrics for the transactions observed by Baird in its analysis.

64.     Failure to fully disclose the key inputs of these analyses renders the Recommendation Statement false and misleading, including, *inter alia*, the following sections of the Recommendation Statement: (i) "*Background of the Offer and the Merger*"; (ii) "*Reasons for Recommendation*"; (iii) "*Opinion of Span-America's Financial Advisor*"; and (iv) "*Certain Unaudited Projected Financial Information*." Accordingly, based on the foregoing disclosure deficiencies in the Recommendation Statement, Plaintiff seeks injunctive and other equitable relief to prevent the irreparable injury that Company stockholders will suffer, absent judicial intervention, if Span-America's stockholders are required to vote on the Proposed Transaction without the above-referenced material misstatements and omissions being remedied.

## CLAIMS FOR RELIEF

### COUNT I
### Claims Against All Defendants for Violations of § 14(e) of the
### Securities Exchange Act of 1934

64.     Plaintiff incorporates each and every allegation set forth above as if fully set forth herein.

65.     Section 14(e) of the Exchange Act provides that it is unlawful "for any person to make any untrue statement of a material fact or omit to state any material fact necessary

in order to make the statements made, in the light of the circumstances under which they are made, not misleading…" 15 U.S.C. § 78n(e).

66.     As discussed above, Span-America filed and delivered the Recommendation Statement to its stockholders, which defendants knew or recklessly disregarded contained material omissions and misstatements as set forth above.

67.     Defendants are violating § 14(e) of the Exchange Act by issuing the Recommendation Statement in which they made untrue statements of material facts or failed to state all material facts necessary in order to make the statements made, in the light of the circumstances under which they are made, not misleading, in connection with the tender offer commenced in conjunction with the Proposed Transaction.  Defendants knew or recklessly disregarded that the Recommendation Statement failed to disclose material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading.

68.     The Recommendation Statement was prepared, reviewed and/or disseminated by defendants. It misrepresented and/or omitted material facts, including material information about the consideration offered to stockholders via the tender offer, the intrinsic value of the Company, and potential conflicts of interest faced by certain Individual Defendants.

69.     In so doing, defendants made untrue statements of material facts and omitted material facts necessary to make the statements that were made not misleading in violation of § 14(e) of the Exchange Act.  By virtue of their positions within the Company and/or roles in the process and in the preparation of the Recommendation Statement, defendants were aware of this information and their obligation to disclose this information in the Recommendation Statement.

70.     The omissions and incomplete and misleading statements in the Recommendation Statement are material in that a reasonable stockholder would consider them important in deciding whether to tender their shares or seek appraisal.  In addition, a

reasonable investor would view the information identified above which has been omitted from the Recommendation Statement as altering the "total mix" of information made available to stockholders.

71.    Defendants knowingly or with deliberate recklessness omitted the material information identified above from the Recommendation Statement, causing certain statements therein to be materially incomplete and therefore misleading.  Indeed, while defendants undoubtedly had access to and/or reviewed the omitted material information in connection with approving the Proposed Transaction, they allowed it to be omitted from the Recommendation Statement, rendering certain portions of the Recommendation Statement materially incomplete and therefore misleading.

72.    The misrepresentations and omissions in the Recommendation Statement are material to Plaintiff, and Plaintiff will be deprived of their entitlement to make a fully informed decision if such misrepresentations and omissions are not corrected prior to the expiration of the tender offer.

## <u>COUNT II</u>
**Claims Against All Defendants for Violations of § 14(d)(4) of the
Securities Exchange Act of 1934 and SEC Rule 14d-9 (17 C.F.R. § 240.14d-9)**

73.    Plaintiff repeats and realleges the preceding allegations as if fully set forth herein.

74.    Defendants have caused the Recommendation Statement to be issued with the intention of soliciting stockholder support of the Proposed Transaction.

75.    Section 14(d)(4) of the Exchange Act and SEC Rule 14d-9 promulgated thereunder require full and complete disclosure in connection with tender offers.

76.    The Recommendation Statement violates § 14(d)(4) and Rule 14d-9 because it omits material facts, including those set forth above, which render the Recommendation Statement false and/or misleading.

77.     Defendants knowingly or with deliberate recklessness omitted the material information identified above from the Recommendation Statement, causing certain statements therein to be materially incomplete and therefore misleading.  Indeed, while defendants undoubtedly had access to and/or reviewed the omitted material information in connection with approving the Proposed Transaction, they allowed it to be omitted from the Recommendation Statement, rendering certain portions of the Recommendation Statement materially incomplete and therefore misleading.

78.     The misrepresentations and omissions in the Recommendation Statement are material to Plaintiff, and Plaintiff will be deprived of their entitlement to make a fully informed decision if such misrepresentations and omissions are not corrected prior to the expiration of the tender offer.

79.     The misrepresentations and omissions in the Recommendation Statement are material to Plaintiff, and Plaintiff will be deprived of their entitlement to make a fully informed decision if such misrepresentations and omissions are not corrected prior to the expiration of the tender offer.

### COUNT III
### Against the Individual Defendants for
### Violations of § 20(a) of the 1934 Act

80.     Plaintiff repeats and realleges the preceding allegations as if fully set forth herein.

81.     The Individual Defendants acted as controlling persons of Span-America within the meaning of Section 20(a) of the 1934 Act as alleged herein.  By virtue of their positions as officers and/or directors of Span-America and participation in and/or awareness of the Company's operations and/or intimate knowledge of the false statements contained in the Recommendation Statement, they had the power to influence and control and did influence and control, directly or indirectly, the decision making of the Company, including the content and dissemination of the various statements that plaintiff contends are false and

misleading.

82.    Each of the Individual Defendants was provided with or had unlimited access to copies of the Recommendation Statement alleged by Plaintiff to be misleading prior to and/or shortly after these statements were issued and had the ability to prevent the issuance of the statements or cause them to be corrected.

83.    In particular, each of the Individual Defendants had direct and supervisory involvement in the day-to-day operations of the Company, and, therefore, is presumed to have had the power to control and influence the particular transactions giving rise to the violations as alleged herein, and exercised the same.  The Recommendation Statement contains the unanimous recommendation of the Individual Defendants to approve the Proposed Transaction.    They were thus directly involved in the making of the Recommendation Statement.

84.    By virtue of the foregoing, the Individual Defendants violated Section 20(a) of the 1934 Act.

85.    As set forth above, the Individual Defendants had the ability to exercise control over and did control a person or persons who have each violated Section 14(d) of the 1934 Act and Rule 14d-9, by their acts and omissions as alleged herein.  By virtue of their positions as controlling persons, these defendants are liable pursuant to Section 20(a) of the 1934 Act.  As a direct and proximate result of defendants' conduct, Plaintiff is threatened with irreparable harm.

## **PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiff demands judgment against defendants jointly and severally, as follows:

(A)    declaring this action to be a class action and certifying Plaintiff as the Class representatives and his counsel as Class counsel;

(B)    declaring that the Recommendation Statement is materially false or misleading;

(C)    enjoining, preliminarily and permanently, the Proposed Transaction;

(D)    in the event that the transaction is consummated before the entry of this Court's final judgment, rescinding it or awarding Plaintiff and the Class rescissory damages;

(E)    directing that Defendants account to Plaintiff and the other members of the Class for all damages caused by them and account for all profits and any special benefits obtained as a result of their breaches of their fiduciary duties.

(F)    awarding Plaintiff the costs of this action, including a reasonable allowance for the fees and expenses of Plaintiff's attorneys and experts; and

(G)    granting Plaintiff and the other members of the Class such further relief as the Court deems just and proper.

### JURY DEMAND

Plaintiff demands a trial by jury.

Respectfully submitted,

**NEXSEN PRUET, LLC**

May 24, 2017

*s/Sima Bhakta Patel*
Sima Bhakta Patel (Fed. ID # 11372)
Andrew A. Mathias (Fed. ID # 10166)
P. O. Drawer 10648
Greenville, South Carolina 29603
Telephone: (864) 282-1163
Facsimile: (864) 477-2631
E-Mail: spatel@nexsenpruet.com
         amathias@nexsenpruet.com

**LEVI & KORSINSKY LLP**
Donald J. Enright (to be admitted *pro hac vice*)
Elizabeth K. Tripodi (to be admitted *pro hac vice*)
1101 30th Street, N.W., Suite 115
Washington, D.C. 20007
Telephone: (202) 524-4290
Facsimile: (202) 333-2121
Email: denright@zlk.com
         etripodi@zlk.com

ATTORNEYS FOR PLAINTIFF